IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES ELIJAH DICKSON,                    :
                    Plaintiff              :
            v.                             : Case No. 3:24-cv-12-KAP
CAPTAIN J. WASHABAUGH, *et al.*,           :
                    Defendants             :

Memorandum Order

For the reasons explained below, defendants' motion to dismiss, ECF no. 26, is granted, and plaintiff's motion for summary judgment, ECF no. 34, is denied. Plaintiff's motion to file an overlength brief, ECF no. 36, is denied as unnecessary since I do not put any limits on the length of a brief and plaintiff's brief has already been filed. The Clerk shall enter judgment for the defendants, and mark this case closed.

Plaintiff James Dickson is an inmate in the custody of the Pennsylvania Department of Corrections at S.C.I. Houtzdale, serving three consecutive life sentences imposed in 2017 in the Court of Common Pleas of Philadelphia County. *See* Commonwealth v. Dickson, 297 A.3d 734, *table, text at* 2023 WL 3018879 (Pa.Super. April 20, 2023).

Dickson filed a *pro se* civil complaint in December 2023 in the Middle District of Pennsylvania, naming as defendants several employees at S.C.I. Somerset, where Dickson alleges he was held until July 2023. The Middle District transferred the matter here in August 2024 because venue is proper in this district. The Complaint was docketed at ECF no. 17. Dickson's allegations are set out in the 8-page Attachment to the 7-page form complaint supplied by the Middle District. Dickson alleges that officers in the RHU at S.C.I. Somerset (Captain Washabaugh, Lieutenant Foster, corrections officer Smith), an unknown mail room supervisor, and an unnamed "Captain of" (who may be a "Security Captain Turner" referred to in the body of the complaint, *see* Complaint ¶II.B and Attachment ¶C.4) interfered with his First Amendment right of access to court. Dickson cites other superfluous legal bases for his claims and adds an allegation that the motivation for various defendants' actions was a desire to retaliate against Dickson for filing grievances and helping other inmates file grievances, but the gravamen of his complaint is that he was denied access to his legal materials while in the RHU and that one or more pieces of legal mail from the state courts relevant to Dickson's attack on his conviction and sentence were returned undelivered. As a result, Dickson alleges that he lost an opportunity to challenge his conviction. Attachment ¶V. As relief, Dickson seeks three things: 1) an order permitting Dickson to file a petition for relief *nunc pro tunc* in the Pennsylvania Supreme Court; 2) an order directing the Department of Corrections to

stop "confiscating plaintiff's legal mail sent by the courts;" and 3) unspecified money damages. Attachment ¶VI.

To summarily clear the ground for the real issue, two thirds of the relief Dickson requests is beyond the jurisdiction of this court. This court does not have appellate jurisdiction over the Pennsylvania Supreme Court and cannot issue an order to that court to consider a *nunc pro tunc* petition. As noted below, Dickson has not sought that relief directly nor explained why he could not have sought it directly from the state court. Second, this court lacks jurisdiction over any claim for injunctive relief sought against a nondefendant because Dickson lacks standing. He is not at Somerset and alleges nothing that would indicate that the named defendants would be in a position to affect any of his future mail.

As a basis for his claim for money damages, Dickson alleges that: 1) on April 30, 2023 defendant Smith denied Dickson access to his legal material (which Dickson refers to as "'confiscated' legal material" and describes at Attachment ¶C.5 as his preliminary hearing and trial transcripts, a trial court opinion, motions and briefs filed in connection with his petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§§ 9541-9546, and police investigation statements); 2) on June 4, 2023 and on August 13, 2023 defendant Foster made the false statement to nondefendant Houser that Dickson was provided access to his legal material when in fact his materials were not made available to him until November 1, 2023, three months after Dickson had been transferred to Houtzdale; 3) on June 15, 2023 defendant Washabaugh denied Dickson his legal material by telling nondefendant Houser at a meeting of the program review committee that Dickson (who was in the RHU at the time) could not have access to his legal materials until he went back into general population; 4) on dates not provided, defendant "mail room supervisor" and a captain or Captain Turner sent undescribed legal mail back to the Pennsylvania Superior Court. Attachment ¶ C.1-4.

As a result of the defendants' actions, Dickson alleges, he "missed Court deadlines" and "lost his appeal" in the Superior Court and was prevented from "pursuing timely filings to the Superior Court" and Pennsylvania Supreme Court because access to his legal material was necessary for Dickson to prove ineffective assistance of counsel and <u>Brady v. Maryland</u> claims. Attachment ¶C.5. Dickson also makes some passing remarks about improper deductions from his inmate account by "the Department of Corrections" because no one checked his records at S.C.I. Fayette. I will not address those passing remarks because the Department of Corrections is not a defendant and plaintiff does not allege any involvement in those deductions by the defendants. Also, because plaintiff has an adequate state-supplied remedy under DC-ADM 804, he would have no federal claim based on his allegations about erroneous duplicate deductions from his inmate account.

Defendants filed a motion to dismiss, ECF no. 26, and I *sua sponte* ordered the parties to treat the motion as one for summary judgment under Fed.R.Civ.P. 56(f)(3) and Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Dickson filed his response as a motion for summary judgment, ECF no. 34. In it he clarifies some of the allegations of the complaint, for instance he claims that his legal materials had been confiscated in January 2023 because he was sent to the RHU for doing legal work for other inmates.

Dickson's conviction and sentence for the drug-fueled shotgun slaying of three persons in April 2016, his wounding of two other persons, and his shooting at police officers are described by the Pennsylvania Superior Court in the course of affirming the denial of Dickson's PCRA his first petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§§ 9541-9546 in Commonwealth v. Dickson, 297 A.3d 734 (*table, text at* 2023 WL 3018879) (Pa.Super. April 20, 2023). To outline the relevant events, Dickson was convicted after a nonjury trial in May 2017, and given life sentences for the three murders plus terms of years for two other attempted murders and for assault offenses committed in the stand-off with police officers following the murders. Following the direct appeal Dickson filed a timely PCRA petition in August 2019 that the trial court denied in March 2022. Dickson proceeded *pro se* on appeal and defaulted all but one issue that the Superior Court addressed on the merits in April 2023: that the prosecution violated Brady v. Maryland by failing to disclose that a knife was found on the body of one of Dickson's victims. The Superior Court, relying in large part on the trial court's findings, found that claim meritless because the existence of the knife was disclosed to the defense and the victim's possession of a knife was immaterial to any issue in the trial. 2023 WL 3018879 at 5-7.

The defendants argue the allegations are insufficient to allege the personal involvement of defendants in the alleged denial of access. As to most of the complaint, I agree. Dickson alleges the involvement of a named defendant in only one event in the month after the Superior Court's April 20, 2023 decision, that being defendant Smith's alleged denial of access on April 30, 2023. The actions by any other defendant after the expiration of the time to file a petition for allowance of appeal could cause no loss of a timely petition. Any failure of personnel at S.C.I. Houtzdale to provide Dickson legal materials between August and November 2023 is not alleged to have been caused by any named defendant at S.C.I. Somerset. No action by any named defendant can be the cause of Dickson's inaction after he was provided his legal materials at Houtzdale, especially since Dickson was obviously able during those months to file a complaint in the Middle District.

Dickson could have filed a timely petition for allowance of appeal in the Pennsylvania Supreme Court through the end of May 2023. After that, Dickson never filed a motion for leave to file a petition for allowance of appeal *nunc pro tunc*. Assuming that

Dickson's lack of any attempt to bring the plight allegedly caused by the named defendants to anyone's attention in the summer of 2023 when that plight would have had a remedy, Dickson cannot speculate that his ability to file some pleading in the Pennsylvania Supreme Court after November 2023 was impaired when he never attempted to take that action. Dickson only alleges that at some point he filed a pleading in the Superior Court advising that court that he could not appeal. Plaintiff's Brief, ECF no. 35 at 23. As the Court of Appeals has noted, a plaintiff cannot create damages by his own inaction. *See* Henry v. Moore, 500 Fed.Appx. 115, 117 (3d Cir. 2012)("[The District Court correctly determined that Henry could not demonstrate actual harm by his delayed receipt of notice of the dismissal of his complaint in *Henry v. Britton* because Henry himself never filed a motion to either extend the time or reopen the time to file an appeal."]

More fundamentally, as a matter of fact Dickson fails to plausibly allege the causation of any injury, a necessary element of any cause of action asserted by Dickson. In Dickson's entire brief he never rises above conclusory allegations to identify one nonfrivolous claim that he lost. There are two venues in which Dickson could have alleged a nonfrivolous claim: a petition for habeas corpus in federal court, and in a petition for allowance of appeal *nunc pro tunc* in the Pennsylvania Supreme Court. Dickson alleges no loss as to either option.

Having presented his claims to the Superior Court, Dickson could have filed a timely federal habeas petition for several months after his materials were returned to him at Houtzdale, but he did not. Dickson's federal petition would have been limited to his single exhausted Brady v. Maryland claim that the Superior Court rejected on the merits, but that limitation was the result of Dickson's *pro se* advocacy and one that resulted from the decision by the Superior Court on April 20, 2023, before any action by any named defendant. Dickson cannot allege that the actions of Smith or any other person other than Dickson caused the default of most of his habeas claims. As to his single exhausted claim, Dickson does not allege facts even close to suggesting that it supported a colorable habeas corpus petition. Habeas corpus is not an automatic do over of a state appeal, and a petitioner is required to point to facts showing the probability of a serious malfunction in the state courts.

As for Dickson's remedy in state court, as noted above since Dickson never actually sought allowance of appeal *nunc pro tunc* Dickson's complaint is only speculating about any impairment of his right to do so. The limited reasons that the Pennsylvania Supreme Court would grant allowance even of a timely petition are set out in Pa.R.App.P. 1114(b). Despite conclusory statements in his brief, Dickson points to no fact alleged in his complaint that makes it plausible that the Pennsylvania Supreme Court would have granted review.

Proof of (or at the pleading stage, plausible allegation of) an injury is a necessary component of any denial of access claim. Gorrell v. Yost, No. 3:11-CV-13-KRG-KAP, 2012 WL 3309638, at *2 (W.D. Pa. July 18, 2012), *report and recommendation adopted*, 2012 WL 3309701 (W.D. Pa. Aug. 13, 2012), *aff'd*, 509 Fed.Appx. 114 (3d Cir. 2013), *citing* Lewis v. Casey, 518 U.S. 343, 353 n.3 and 355. Dickson himself recognizes this: Plaintiff's Brief, ECF no. 35 at 10: "Where the underlying lost or rejected legal claim must be specifically identified and meritorious, summary judgment is appropriate." The Supreme Court agrees with him: because of the need to give fair notice to a defendant, there is a

> need for care in requiring that the predicate claim be described well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope.

Christopher v. Harbury, 536 U.S. 403, 416 (2002). The complaint and Plaintiff's Brief never rise above the conclusory assertion that any allegation of interference with a court filing is a sufficient denial of access injury. That is not correct. If it were, any person anywhere at any time could state a claim that any delay of any correspondence with the government gives them a compensable injury. It is the conclusory nature of such allegations rather than their fanciful nature that would disentitle them to the presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).

In the end, determining whether a complaint states a plausible claim for relief is a context-specific task that requires common sense, and where the allegations do not permit the court to infer more than the mere possibility of misconduct, the complaint has not "shown" as required by Fed.R.Civ.P. 8 "that the pleader is entitled to relief." Ashcroft v. Iqbal, *supra*, 556 U.S. at 679. The complaint does not meet the requirements of Rule 8. As a result, the motion to dismiss is granted.

DATE:  February 14, 2025    _____

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

James E. Dickson MY-7377
S.C.I. Houtzdale
P.O. Box 1000
Houtzdale, PA 16698